## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHARLES F. LEWIS,

      Plaintiff,

      v.                             Case No. 14-3069-JAR

UNITED STATES OF AMERICA,

      Defendant.

### MEMORANDUM AND ORDER

Plaintiff Charles F. Lewis, proceeding *pro se*, filed suit against Defendant United States of America and several individual Defendants alleging claims for failure to provide proper medical care while Plaintiff was an inmate at three federal prisons. This matter comes before the Court on Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 16), Plaintiff's Motion for Leave to File Motion for Reconsideration and Reinstatement of Individual Kansas Defendants (Doc. 19), Plaintiff's Motion for the Court to Accept S.F. Form 95 as Timely (Doc. 20), and Plaintiff's Second Motion to Appoint Counsel (Doc. 26). The motions are fully briefed and the Court is prepared to rule. Because Plaintiff fails to controvert the facts presented in Defendant's motion for summary judgment, the Court deems those facts admitted and finds that there is no genuine dispute of material fact regarding Plaintiff's medical care. The Court therefore grants Defendant's motion for summary judgment. Further, for the reasons stated below, the Court denies Plaintiff's motion for reconsideration, motion for the Court to accept S.F. Form 95 as timely, and second motion to appoint counsel.

I.      **Procedural History**

Plaintiff filed an administrative complaint with the Federal Bureau of Prisons ("BOP") on March 13, 2012, alleging that medical personnel at the United States Penitentiary in

Leavenworth, Kansas ("USP Leavenworth") exhibited deliberate indifference toward his medical needs and failed to provide proper medical care in relation to his stoma.[1]  Specifically, Plaintiff alleged that when he followed Dr. William McCollum's instructions to digitally dilate his stoma and soak the scar tissue in a salt water solution, he experienced significant pain and bleeding at the stoma site.  Medical staff later told Plaintiff that Dr. McCollum "didn't know what he was doing," and provided him with new instructions that included not digitally dilating his stoma.  Plaintiff also alleged that although he continually requested medical supplies, he did not receive the supplies in a timely manner and medical staff reduced his supplies, which led to pain and medical complications with his stoma site.[2]  Plaintiff further alleged that he requested to see a stoma specialist, but was not allowed to see a specialist in a timely manner.  Finally, Plaintiff alleged that BOP medical staff members made various comments indicating their indifference toward his medical needs.[3]

After the BOP denied his claim, Plaintiff filed this suit on April 24, 2014.  Judge Samuel A. Crow entered an order on July 14, 2014 directing Plaintiff to show cause why his Complaint should not be dismissed for failing to pay filing fees and for failure to state a claim.[4]  Although the court granted Plaintiff an extension until September 2, 2014 to respond to the order to show cause, Plaintiff filed his First Amended Complaint ("Amended Complaint") on September 8,

---

[1]Plaintiff alleges that he filed this administrative complaint, a Standard Form 95, on March 13, 2012, but that the complaint was "mysteriously never received" by the BOP.  *See* Doc. 21-3 at 1–11 (S.F. Form 95 dated March 3, 2012, addressed to BOP North central regional Office).  Defendant argues that the BOP first received a complaint from Plaintiff on July 29, 2013, and that Plaintiff has not sufficiently alleged or established that his March 3, 2012 complaint was actually mailed to and received by the BOP.  For purposes of determining the present motions, the Court assumes, without deciding, that the filing date for Plaintiff's administrative claim is March 13, 2012.

[2]Doc. 20-3 at 5.  Plaintiff does not elaborate in his administrative complaint on the nature of these "complications."

[3]*E.g.*, *id.* at 6 (alleging that a BOP nurse told Plaintiff that he would not have had these medical problems if he had not been incarcerated); *id.* at 6–7 (alleging that a BOP nurse "stonewalled" Plaintiff during a meeting concerning his medical needs and ended the meeting by stating that "[e]verybody shits, you just shit in a bag").

[4]Doc. 6.

2014, and filed his response to the order to show cause on September 26, 2014.[5]  The Amended Complaint again alleged that BOP medical staff were negligent in providing medical care and exhibited deliberate indifference toward his medical needs.  Plaintiff repeated his allegations concerning (1) Dr. McCollum's instructions to digitally dilate his stoma and the resulting pain; (2) statements by other providers that Dr. McCollum's treatment plan was inadequate; (3) Plaintiff's requests for supplies and the resulting delays and reductions in supplies; (4) Plaintiff's requests to see a specialist and the resulting delays in seeing the specialist; and (5) comments made by medical staff related to his stoma.  Plaintiff further alleged, for the first time, that (1) overcrowding and inadequate staffing at USP Leavenworth and FCI Big Spring contributed to improper care of his medical issues; (2) Defendant failed to properly hire, train, and supervise BOP medical staff; and (3) the BOP failed to provide protective footwear, hearing aids, and corrective shoulder surgery.

On August 25, 2015, Judge Crow entered an order directing that the case proceed as a Federal Tort Claims Act ("FTCA") claim against Defendant United States, and dismissing all individual Defendants from the case based on either lack of personal jurisdiction or failure to state plausible *Bivens* claims.[6]  The case was reassigned to this Court on the same date. Defendant filed its motion to dismiss or, in the alternative, motion for summary judgment on December 8, 2015.  Defendant also filed, pursuant to D. Kan. Rule 56.1, a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment on the same date.[7]  The Notice informed Plaintiff that unless he filed a response with supporting affidavits and/or other documents in a timely manner, the Court may accept the facts presented in Defendant's

---

[5]Docs. 7 & 8.

[6]Doc. 10.

[7]Doc. 18.

memorandum in support of summary judgment as true and dismiss the case.  On March 21,

2016, Plaintiff submitted to the Court a document that was docketed in the following three ways:

(1) Motion for Reconsideration and Reinstatement of Individual Kansas Defendants; (2) Motion

for the Court to Accept S.F. Form 95 as Timely; and (3) Plaintiff's Response to Defendant's

Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[8]  Plaintiff's response

to the motion for summary judgment did not controvert any facts set forth by Defendant, but

instead presented additional allegations concerning his medical care that were not supported by

evidence in the record.[9]  Defendant filed a reply to the motion to dismiss and motion for

summary judgment, as well as responses to Plaintiff's motions on April 1, 2016.  On May 5,

2016, Plaintiff filed a second motion to appoint counsel, as well as replies to his earlier motions.

Defendant filed a response to the motion to appoint counsel on May 10, 2016.

## II.    Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 16)

The Court finds that summary judgment is warranted because there is no genuine dispute

of any material fact and Defendant is entitled to judgment as a matter of law.  Although

Defendant moves in the alternative for dismissal, the Court assumes without deciding that

Plaintiff has stated a plausible claim under the FTCA.[10]  Thus, the Court proceeds to Defendant's

summary judgment motion.

---

[8]Docs. 19, 20, 21.

[9]*See* Doc. 21.

[10]The Court, however, is doubtful that Plaintiff has stated a plausible FTCA claim for treatment of his pre-existing stoma.  In his Amended Complaint, Plaintiff alleges that his treatment was painful but concedes that it was ultimately effective, and he does not allege that his pre-existing condition worsened.  Doc. 7; *See Harvey v. United States*, 685 F.3d 939, 947 (10th Cir. 2012) (citing 28 U.S.C. § 1346(b)(1)) (explaining that a plaintiff claiming an injury under the FTCA must demonstrate that the injury arose "from the negligence or wrongful act or omission of a government employee, not solely from a condition that existed before the medical treatment at issue"); *Foxx v. United States*, No. 11-3020-SAC, 2012 WL 4344071, at *4 (D. Kan. Sept. 21, 2012) (dismissing FTCA claim where plaintiff alleged only that treatment caused pain, not that it worsened his pre-existing condition).

A.      **Legal Standard**

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[11] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[12]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[13]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[14]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[15]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[16]  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[17]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that

---

[11]Fed. R. Civ. P. 56(a).

[12]*City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[13]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[14]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[15]*Adler*, 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[16]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[17]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

there is a genuine issue for trial."[18]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[19]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[20]  In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[21]  The Court will deem admitted any fact properly set forth by the movant unless the fact is specifically controverted by the non-movant.[22]

Where, as here, a *pro se* plaintiff opposes summary judgment, the court must construe the plaintiff's filing liberally and afford the plaintiff's filings some leniency.[23]  Additionally, "[c]ourts must take added precautions before ruling on a motion for summary judgment when a *pro se* litigant is involved . . . especially when enforcing these [technical] requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits."[24]  At the same time, it is not the proper function of a district court to assume the role of advocate for a *pro se* litigant, and *pro se* parties are expected to follow the Federal Rules of Civil Procedure, as all litigants must.[25]

---

[18]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[19]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[20]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[21]*Adler*, 144 at 671.

[22]D. Kan. Rule 56.1(a); Fed. R. Civ. P 56(e).

[23]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (D. Kan. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267-DDC-JPO, 2016 WL 3405126, at *5 (D. Kan. June 21, 2016).

[24]*Wilson v. Skiles*, No. 02-3190-JAR, 2005 WL 466207, at *1 (D. Kan. Feb. 4, 2005) (citing *Hass v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994)).

[25]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *McDaniels v. McKinna*, 96 F. App'x 675, 578 (10th Cir. 2004).

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[26]

**B.      Uncontroverted Facts**

Because Plaintiff does not controvert any of the facts set forth in Defendant's memorandum in support of summary judgment, the Court deems the following facts admitting pursuant to D. Kan. Rule 56.1 and Fed R. Civ. P. 56.  Plaintiff Charles Lewis began serving his current 240-month sentence for various Mail, Wire, and Securities Fraud charges on June 23, 2008 at the Federal Correctional Institution in Englewood, Colorado.  On September 30, 2008, Plaintiff was transferred to USP Leavenworth, where he remained until April 11, 2013.  Plaintiff was transferred to FCI Big Spring on April 11, 2013, and he continues to reside there.

Prior to his incarceration, Plaintiff underwent a resection of his sigmoid colon due to diverticulitis in 2000, resulting in a colostomy and stoma.  A stoma is created through the use of a surgical incision and extending a healthy portion of intestine through the abdominal wall to permit removal of fecal waste in a location other than the anus.  Plaintiff came into BOP custody with the stoma and colostomy in place.  During his incarceration, Plaintiff reported medical issues related to ulcerative colitis and his stoma.  Because of these issues and other chronic conditions, Plaintiff saw clinical staff at USP Leavenworth and other BOP institutions during advanced scheduled appointments and through the sick call process and Chronic Care Clinics ("CCC").

Upon entering custody at FCI Englewood on September 23, 2008, Plaintiff was evaluated by medical staff on two occasions.  Plaintiff disclosed a history of ulcerative colitis, diverticulitis

---

[26]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

(resulting in a colostomy), and other conditions.  On July 15, 2008, medical staff evaluated Plaintiff's stoma and reported that it was non-tender and soft.  On August 1, 2008, a BOP doctor evaluated Plaintiff again and gave him equipment for his stoma and a referral for a surgical consult to evaluate whether his colostomy needed to be secured to the skin better.

Before obtaining the surgical consult, Plaintiff was transferred to USP Leavenworth. Medical staff initially screened him there on September 30, 2008.  Plaintiff was seen again shortly thereafter, and he reported that his colitis was well controlled.  At a sick call appointment on December 18, 2008, Plaintiff complained that his stoma tore easily.  Plaintiff was recommended for a general surgical consult.  On December 23, 2008, the Clinical Director, Dr. William McCollum, evaluated Plaintiff's stoma.  Dr. McCollum discontinued the previous surgical consult and opted to further evaluate Plaintiff's surgical medical records and his current condition before ordering surgical intervention.  Dr. McCollum recommended that Plaintiff digitally dilate the colostomy site pending further review.

On March 30, 2009, at a CCC appointment, Plaintiff indicated he wanted his colostomy surgically reversed and acknowledged that he was awaiting further review of his prior medical records.  On July 16, 2009, an outside specialist at Cushing Hospital evaluated plaintiff for possible surgical reversal, and noted that Plaintiff's colostomy was pink with no blood noted. During a CCC visit on September 9, 2009, Plaintiff denied problems with his colostomy and blood in his stool.  Plaintiff was advised that surgical reversal for his colostomy was not appropriate given his prior operation.  Medical staff also noted marked improvement of his colostomy at this appointment.

Plaintiff was seen periodically over the next few months where he expressed concerns of pain and scarring based on dilation of his stoma.  Clinical staff and the Clinical Director closely

evaluated Plaintiff during this time.  Despite his concerns that surgical reversal of the colostomy site could result in significant complications, including death, the Clinical director referred Plaintiff to a general surgeon for evaluation.  On January 3, 2011, a general surgeon evaluated Plaintiff's colostomy site.  The surgeon recommended using three percent saline solution on gauze pads as needed to help heal the hypertrophic granulation tissue.  At a sick call appointment on January 3, 2011, Plaintiff asked about using silver nitrate and obtaining another specialist's opinion.  Plaintiff complained during his CCC visit later that month of difficulty in having his pouches stay in place and of absorption problems.

In March 2011, Plaintiff submitted an Inmate Request seeking a single cell and additional medical supplies.  Plaintiff received neither, because medical staff determined he was receiving an adequate amount of supplies and a single cell was not clinically or medically necessary. Plaintiff's monthly gauze patch allotment was previously doubled to ten from five, and medical staff noted that he was hoarding supplies.  At a CCC appointment in July 2011, Plaintiff admitted that he was not following instructions given by an outside medical specialist because he was unhappy with the plan of care. At a CCC appointment on January 6, 2012, Plaintiff complained about his stoma.  BOP staff arranged for nursing staff to evaluate his stoma area and determine if a surgical consult was necessary.  On February 3, 2012, a BOP registered nurse evaluated Plaintiff's stoma.  The nurse noted Plaintiff was obsessive about digitally dilating his stoma and changing his wafer/bag, and that doing so too frequently caused irritation and trauma.  The nurse worked with Plaintiff to decrease the frequency of dilation and to properly use his supplies.  The nurse also recommended that an ostomy nurse at the Federal Medical Center in Lexington, Kentucky assess Plaintiff's situation and evaluate supplies and treatment options.

The nurse at USP Leavenworth consulted with the ostomy nurse in Lexington, who recommended various supplies, including a ConvaTec Ostomy Appliance Belt, ConvaTec Stomahesive powder, 3M Cavilon No Sting Barrier Film, Eakin Cohesive Seals, Smaller ConvaTec Durahesive Convex Wafers, closed end pouches, and Kenalog spray.  The ostomy nurse also recommended clinical staff assist with changing wafers to ensure compliance with the care plan.  Plaintiff met with the nurse to review this plan on April 6, 2012.  From April to June 2012, BOP staff evaluated Plaintiff's stoma every three to four days to ensure compliance with the plan of care for Plaintiff's stoma.  Plaintiff expressed concerns initially about foregoing digital dilation, which he indicated he had always done since he had the stoma.  Medical staff also noted Plaintiff's non-compliance with the care plan during this time period.  Nevertheless, Plaintiff's stoma area significantly improved, and Plaintiff verbalized his pleasure with the treatment plan, stating that the nurse had "found a good recipe."

On June 14, 2012, a wound care stoma nurse recommended the use of silver nitrate. Nursing staff continued to see Plaintiff one to two times per week for the use of the silver nitrate, which significantly improved the hypertrophic granulation.  Medical staff noted that the skin around the stoma was intact and normal in color.  On December 14, 2012, the outside stoma nurse evaluated Plaintiff again, noted significant improvement, and recommended use of silver nitrate only as needed.  In March 2013, clinical staff agreed to give Plaintiff supplies for him to manage his own stoma care.  Plaintiff was advised against dilating the area to avoid new scaring, bleeding, and irritation.  In response, Plaintiff shook his head and stated that "the courts will decide."[27]  The nurse who worked closely with Plaintiff with respect to his wound care noted his historical noncompliance.

---

[27]Doc. 17-3 at 154.

In April 2013, Plaintiff transferred to FCI Big Spring, where staff continued to evaluate his stoma and colostomy through sick call and CCC with appropriate supplies for care of his colostomy and stoma.  Plaintiff did not appear for two of his sick call appointments at FCI Big Spring.  In August 2013, an outside surgeon evaluated Plaintiff's colostomy and recommended silver nitrate as needed and no other significant intervention at that time.

### C.      Discussion

Defendant first moves for summary judgment on several claims based on Plaintiff's failure to exhaust administrative remedies.  Exhaustion of administrative remedies is a prerequisite to suit under the FTCA.[28]  Courts lack jurisdiction over FTCA claims not presented to the appropriate federal agency.[29]  Defendant argues that Plaintiff has not exhausted his claims related to (1) overcrowding and inadequate staffing at USP Leavenworth and FCI Big Spring; (2) failure to hire, train, and supervise BOP medical staff; and (3) failure to provide protective footwear, hearing aids, and corrective shoulder surgery.  The Court agrees.  Plaintiff's administrative complaint does not allege these claims.  The Court therefore lacks jurisdiction to hear these non-exhausted FTCA claims.  Thus, the Court turns to whether genuine disputes of material fact remain as to Plaintiff's exhausted claims—those related to his treatment at USP Leavenworth.

Defendant moves for summary judgment on the basis that no genuine dispute of material fact exists as to whether Plaintiff suffered an injury as a result of his treatment at USP Leavenworth.[30]  To establish a claim under the FTCA, a plaintiff must provide evidence that the

---

[28]28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 107 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

[29]*See* 28 U.S.C. § 2675(a); *Greenlee v. U.S. Postal Serv.*, 247 F. App'x 953, 954–55 (10th Cir. 2007) (finding that district court lacked jurisdiction over FTCA claims not presented to appropriate federal agency).

[30]Defendant also moves for summary judgment based on the application of Kansas' statute of repose, K.S.A. § 60-513(c), and the FTCA's statute of limitations on tort claims, 28 U.S.C. § 2401(b).  Because the Court

claimed injury arose "from the negligence or wrongful act or omission of a government employee, not solely from a condition that existed before the medical treatment at issue."[31] Further, "the FTCA mandates application of [the law of the place] to resolve questions of substantive liability."[32] "In most cases, 'law of the place' means the law of the state where the act or omission occurred.[33]   Here, Plaintiff's First Amended Complaint alleges claims that sound in medical malpractice.  Because Plaintiff's exhausted claims relate to his treatment at USP Leavenworth, the "law of the place" is that of Kansas.  To establish a claim of medical malpractice in Kansas, a plaintiff must prove that: (1) the healthcare provider owed the patient a duty of care; (2) the healthcare provider breached that duty or deviated from the applicable standard of care; and (3) the patient's injury proximately resulted from the healthcare provider's breach.[34]

Here, the undisputed facts in the record demonstrate that Plaintiff received timely and competent care for the medical issues related to his stoma.  Doctors and nurses at USP Leavenworth created a plan of care and supervised Plaintiff while he progressed through the plan.  To be sure, Plaintiff experienced pain and medical staff revised the plan during the course of Plaintiff's treatment.  However, the treatment ultimately resulted in an improved condition in Plaintiff's stoma, and Plaintiff commented to his medical providers that they had "found a good recipe for treatment."  Plaintiff does not contest these facts in his response to Defendant's summary judgment motion.  Rather, Plaintiff's response reads like a second amended complaint,

---

finds that the uncontroverted facts regarding Plaintiff's medical care warrant summary judgment, the Court does not reach Defendant's additional arguments.

[31] *Harvey v. United States*, 685 F.3d 939, 947 (10th Cir. 2012) (quoting 28 U.S.C. § 1346(b)(1)).

[32] *Id.* at 950 (quoting *Cannon v. United States*, 338 F.3d 1183, 1192 (10th Cir. 2003)).

[33] *Id.*

[34] *Esquivel v. Watters*, 183 P.3d 847, 850 (Kan. 2008) (citing *Nold v. Binyon*, 31 P.3d 274 (Kan. 2001)); *Staples v. Chester*, No. 08-3233-SAC, 2012 WL 996943 (D. Kan. March 23, 2012) (citing *Wozniak v. Lipoff*, 750 P.2d 971, 975 (Kan. 1988)).

alleging facts regarding perceived inadequacies in his medical treatment without providing factual support from the record.  As explained above, Plaintiff is not excused, simply by nature of his status as a pro se litigant, from compliance with the requirement that he support assertions of fact with evidence from the record pursuant to Fed. R. Civ. P. 56.[35]  Indeed, Defendant's Notice to Pro Se Litigant Who Opposes a Motion For Summary Judgment expressly informed Plaintiff of his obligations under Rule 56 and notified him that he could not avoid summary judgment by relying on factual allegations without evidentiary support in the record.[36]  Plaintiff has simply failed to point to any evidence in the record demonstrating that BOP medical staff breached their duty or deviated from the applicable standard of care.  Thus, the Court finds that there is no genuine dispute of fact that Plaintiff received proper medical care while incarcerated at USP Leavenworth, and that Defendant is entitled to judgment as a matter of law.  Accordingly, the Court grants Defendant's summary judgment motion.

### III.   Plaintiff's Motion for Leave to File Motion for Reconsideration and Reinstatement of Individual Kansas Defendants (Doc. 19)

In his response to Defendant's motion to dismiss or for summary judgment, Plaintiff included a Motion for Leave to File Motion for Reconsideration and Reinstatement of Individual Kansas Defendants.[37]  D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders, while Fed. R. Civ. P. 59 and 60 govern motions to reconsider dispositive orders.[38]  Fed. R. Civ. P. 59 applies to motions to reconsider that are filed within 28 days of the entry of judgment,

---

[35] *See supra* Part II.B.1.; *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quoting *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994)) ("Pro se status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'").

[36] *See* Doc. 18.

[37] Although Plaintiff's motion is styled as a "motion for leave to file motion for reconsideration," the Court construes it as a motion for reconsideration.

[38] D. Kan. Rule 7.3; *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

while Rule 60 applies to motions to reconsider that are filed "within a reasonable time," and in no event more than one year after the entry of judgment.[39]   Here, the Court's order of partial dismissal was a dispositive order, as it was a decision on the merits that resolved some of Plaintiff's claims in the case.[40]   Furthermore, Plaintiff filed his motion more than 28 days after the entry of Judge Crow's order of dismissal.[41]   Therefore, the Court considers Defendant's motion for reconsideration under Fed. R. Civ. P. 60.   Under Rule 60, grounds warranting a motion to reconsider include: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[42]   "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[43]   Plaintiff does not identify any grounds or advance any arguments for reconsideration, and the Court is aware of none.[44]   Therefore, the Court denies Plaintiff's motion pursuant to Fed. R. Civ. P 60.

## IV.   Plaintiff's Motion for Court to Accept S.F. Form 95 as Timely (Doc. 20)

Plaintiff also included in his response a Motion for the Court to Accept S.F. Form 95 as Timely.   The relevant "S.F. Form 95" refers to the Standard Form 95 complaint that Plaintiff completed and allegedly submitted to the BOP on March 13, 2012.   Plaintiff's motion appears to be in response to Defendant's argument in support of its summary judgment motion that the

---

[39]Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(c)(1).

[40]*See Phelps v. Hamilton*, 122 F.3d 1309, 1323–24 (10th Cir. 1997) ("we have held that a motion will be considered under Rule 59(e) 'when it involves reconsideration of matters properly encompassed in a decision on the merits.'") (quoting *Martinez v. Sullivan*, 874 F.2d 751, 753 (10th Cir. 1989)); *see also Johnson v. Simonton Bldg. Props., Inc.*, No. 08-2198, 2009 WL 902409, at *2 (D. Kan. Mar. 31, 2009) (finding that order of partial dismissal was dispositive because it terminated some of plaintiffs' claims).

[41]The order of dismissal was filed on August 25, 2015.  Doc. 15.  Plaintiff submitted his motion to reconsider on March 21, 2016.  Doc. 19.

[42]*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[43]*Id.*

[44]*See* Doc. 19.

FTCA statute of limitations bars Plaintiff's action because he filed his administrative complaint on July 29, 2013, rather than on March 13, 2012.[45]  As already discussed, the Court assumed without deciding for purposes of summary judgment that Plaintiff submitted his administrative claim on March 13, 2012.  The Court granted summary judgment on grounds other than the application of the FTCA statute of limitations.  Thus, the Court finds that Plaintiff's motion is moot.

## V.     Plaintiff's Second Motion to Appoint Counsel (Doc. 26)

Plaintiff moves for a second time for the appointment of counsel.  In support of his motion, Plaintiff argues that he is untrained in the practice of law, that he is unable to afford counsel, and that the issues in this case are complex and will require significant research and investigation.  There is generally no constitutional right to the appointment of counsel in a civil case, and the decision whether to appoint counsel is left to the discretion of the district court.[46]  In deciding on a motion for appointment of counsel, district courts are instructed to assess factors including the merits of the plaintiff's claims, the nature and complexity of the factual and legal issues, and the plaintiff's ability to investigate those facts and present his claims.[47]  The Tenth Circuit has indicated that the viability of a plaintiff's claim may be the most compelling factor.[48]  Pursuant to this rationale, Judge Crow denied Plaintiff's first motion for appointment of counsel largely because it was not clear that Plaintiff had asserted a viable claim.[49]

---

[45]*See* Doc. 17 at 20–23.

[46]*Snyder v. Whetsel*, 152 F. App'x 730, 732 (10th Cir. 2005); *Jarrett v. U.S. Sprint Commc'ns. Co.*, 22 F.3d 256 (10th Cir. 1994) (citing *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989)) ("While appointed counsel in a civil case is no doubt desirable to a plaintiff, it is not a constitutional right).

[47]*Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

[48]*Rucks*, 57 F.3d at 979.

[49]Doc. 4 at 37.

Plaintiff does not address these factors in support of his motion, beyond mentioning briefly that the issues involved in this case are complex.  The Court recognizes that the nature of this case, which involves state and federal legal standards and voluminous medical records, may be factually and legally complex, especially for a *pro se* plaintiff.  However, the Court also recognizes that Plaintiff seemingly has the ability to investigate the facts of his claim, and has had several months to prepare responses and other motions.  Most importantly, as explained above, the Court finds that Plaintiff has not presented sufficient evidentiary support to maintain a viable claim and survive summary judgment.  Therefore, the Court denies Plaintiff's second motion for appointment of counsel.

## VI.    Conclusion

The Court grants Defendant's motion for summary judgment because there is no genuine dispute of material fact concerning Plaintiff's medical care, and thus Defendant is entitled to judgment as a matter of law.  Additionally, the Court denies Plaintiff's motion for leave to file motion for reconsideration because the motion does not state any grounds for reconsideration and no such grounds appear to exist.  Because the Court resolves Defendant's motion for summary judgment on grounds not related to the timing of Plaintiff's administrative claim, the Court finds that Plaintiff's motion for the Court to accept S.F. Form 95 as timely is moot. Finally, the Court denies Plaintiff's second motion for appointment of counsel because Plaintiff has not presented a viable claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 16) is **granted**.  Defendant's Motion to Dismiss (Doc. 16) is therefore **moot**.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File Motion for Reconsideration and Reinstatement of Individual Kansas Defendants (Doc. 19) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motion for the Court to Accept S.F. Form 95 as Timely (Doc. 20) is **denied as moot**.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Second Motion to Appoint Counsel (Doc. 26) is **denied**.

**IT IS SO ORDERED.**

Dated: July 29, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE